**DALBY et al. v. KALAHAR.**

No. 7857.

Circuit Court of Appeals, Sixth Circuit.

Sept. 18, 1939.

Howell Van Auken, of Detroit, Mich., and John T. Lungerhausen, of Mt. Clemens, Mich. (Lungerhausen, Weeks, Lungerhausen & French, of Mt. Clemens, Mich., and Lucking, Van Auken & Sprague, of Detroit, Mich., on the brief), for appellants.

Bert V. Nunneley, of Mt. Clemens, Mich. (Christian F. Matthews, of Mt. Clemens, Mich., on the brief), for appellee.

Before HICKS, HAMILTON, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

Appellants were assessed as owners of stock in the Citizens Savings Bank of Mt. Clemens, Michigan. They claim that they held the stock merely as trustees and, in consequence, that they are exempt from liability under Sec. 11945, 3 Mich. Compiled Laws for 1929, Mich.Stat.Ann., Vol. 17, Sec. 23.52.

Appellant Hiram J. McGill was president of the Citizens Savings Bank, and appellants Spencer Dalby and Arch Richards were directors. Robert M. Allan was president and apparently in general control of the American State Bank of Detroit.

Early in 1929, Allan, ostensibly for the benefit of the American State Bank, determined to acquire control of several suburban banks in the Detroit area, includ-

ing the Citizens Savings Bank of Mt. Clemens. His endeavors were not entirely successful, and he was later indicted, tried and convicted. See People v. Allan, 263 Mich. 182, 248 N.W. 589.

At this time Allan was regarded as very wealthy, and exerted considerable influence in Detroit banking circles. By the latter part of 1929, he apparently dominated the Citizens Savings Bank, for he dictated its policies, and supervised a merger of it with the Ullrich Savings Bank, also of Mt. Clemens.

About this time, he directed the officers of the Citizens Savings Bank to purchase as much of its own stock as possible on his behalf. The officers carried out his instructions, using funds of the savings department of the Citizens Savings Bank to pay for such stock as could be purchased. The stock was then forwarded at frequent intervals either to Allan or to the American State Bank, which would credit the Citizens Savings Bank with the purchase price of the stock.

In this fashion, 8,200 shares were forwarded, and a certificate was ultimately issued in the name of Allan.

An additional 2,184 shares were purchased and paid for by the Citizens Savings Bank, but were not forwarded to either Allan or the American State Bank, apparently because Allan was then unable to raise sufficient additional funds to cover their cost. Because of this unexpected financial difficulty, the original plan to purchase all of the stock of the Citizens Savings Bank that could be secured, or even a majority of it, was abandoned. Inasmuch as the purchase of its own stock was forbidden by Michigan law, it became necessary to convert the stock on hand into cash by other means. Allan accordingly instructed that these shares be sold to local residents. Pending an opportunity thus to resell them, these 2,184 shares were carried by the Citizens Savings Bank as a cash item until the State Banking Department, after repeatedly objecting over a period of several months to the carrying of the stock in this fashion, finally insisted, in the fall of 1930, that some immediate disposition thereof be made.

Under the direction of Allan, a certificate covering this stock was then issued in the name of McGill, Dalby and Richards, trustees, and they executed a note for $141,270 to the American State Bank, signing it, "S. J. Dalby, Arch N. Richards, H. J. McGill, Trustees." They pledged the stock as collateral to secure payment of the note. Pursuant to an arrangement made by Allan, the American State Bank then credited the Citizens Savings Bank with the amount of the note. Two renewal notes were subsequently executed. The original and the first renewal, upon cancellation, were delivered to the Citizens Savings Bank and are now in its files. Interest on these notes was paid by the Citizens Savings Bank and dividends upon the stock pledged as collateral were credited to a special account.

Soon thereafter the American State Bank found itself in straitened circumstances, and in March, 1931, its assets and liabilities, including appellants' note and the stock involved herein, were taken over by the Peoples Wayne County Bank of Detroit. The Citizens Savings Bank was closed in 1932 and placed in the hands of a receiver.

As assessment was levied upon the stockholders of the Citizens Savings Bank, as of April, 1933, pursuant to Sec. 11945 of the Compiled Laws of Michigan for 1929, Mich.Stat.Ann., Vol. 17, Sec. 23.52.

The receiver of the Citizens Savings Bank filed the present bill in the Circuit Court for the County of Wayne, on March 11, 1935, to collect an assessment of 100% on the bank's capital stock previously ordered.

Upon petition of one of the several defendants, B. C. Schram, receiver of the First National Bank—Detroit, the cause was removed to the United States District Court.

The District Court held that the 2,184 shares of stock involved in this appeal were not acquired by appellants as trustees and that unqualified ownership never passed to the Peoples Wayne County Bank. It accordingly decreed that appellants were individually liable to the extent of the par value of the 2,184 shares, or $43,680, with interest thereon from April 20, 1933.

Section 11945 of the Compiled Laws of Michigan for 1929 (Mich.Stat.Ann., Vol. 17, Sec. 23.52) provides as follows:

"Liability of stockholders; enforcement. *The stockholders of every bank shall be individually liable,* equally and ratably, and not one (1) for another, *to satisfy the obligations of said bank to the amount of their stock at the par value thereof, in addition to the said stock; but persons holding stock as* executors, admin-

istrators, guardians or *trustees, and persons holding stock as collateral security, shall not be personally liable as stockholders,* but the assets and funds in their hands constituting the trust shall be liable to the same extent as the testator, intestate, ward or person interested in such trust funds would be, if living or competent to act; *and the person pledging such stock shall be deemed the stockholder and liable under this section. \* \* \* "* (Italics ours.)

It is clear that appellants were pledgors of the stock in question to secure payment of their note to the American State Bank, and the statute quoted above expressly provides that a pledgor is subject to assessment. It follows that appellants were exempt from assessment only if they held the stock as trustees.

█ Whether a trust was created depends upon the intent of the parties when the stock certificate was issued to appellants. It should be borne in mind that Allan's original plan to acquire control of the Citizens Savings Bank was abandoned prior to the transfer of the stock in question to appellants because his credit with the American State Bank had been exhausted. His dominant purpose thereafter, as well as that of appellants, was to resell the 2,184 shares of stock carried as a cash item. However, because of the insistent attitude of the Banking Department, it was impossible to continue to carry this stock for as long a time as would have been required for its redistribution to local residents.' Consequently, the need for a different device to effect this distribution became imperative.

█ The material facts, giving rise to the alleged trust, are that, in order to remove this stock as a cash item of the Citizens Savings Bank, Allan directed that a certificate for it be issued to three directors of this Bank and that they execute a promissory note to the American State Bank, pledging the stock as security. The sole object of this transaction, namely, the removal of the banking department's criticism, was accomplished when the American State Bank credited the Citizens Savings Bank with the amount of the note.

Since Allan was believed to be very wealthy and was quite influential at that time, appellants apparently followed his instructions as a matter of routine. It may be conceded that, in accepting a transfer of this stock, appellants had an understanding with Allan, as was later testified, that they were to be subject to no liability by virtue of the transaction. But the mere intent that they would not be liable, or an understanding that they would be reimbursed by Allan if subjected to loss, is not sufficient to establish a trust relationship. To accomplish this result, one must actually intend that the relationship be established and not merely that one of its beneficial consequences be enjoyed. While appellants were designated as trustees in the stock certificate and designated themselves as such in the note, we are not convinced that there was a bona fide intent that the stock be held in trust. On the contrary, this transfer appears to have been merely part of a device or "vehicle," as the transaction was described by appellant McGill, whereby a loan could be secured from the American State Bank so that the stock would no longer be carried illegally by the Citizens Savings Bank.

Had there been at that time an honest intent to create a trust relationship for the benefit of Allan, it is strange that interest on the note should have been paid by the Citizens Savings Bank; that dividends on the stock should have been credited to an account of the bank and ultimately transferred to its undivided profits; and that the original and first renewal notes, upon cancellation, should have been surrendered to and should now be in the files of the Citizens Savings Bank. Such an intent appears to be negatived by appellant McGill's explanation as to why the stock was not issued in the name of Allan and his note simply indorsed by appellants. He testified:

"We didn't have to endorse his note. The proposal that he made was that we send the stock certificates down with a trusteed note and as rapidly as we cared to or were in position to, we would reimburse him for the amount of money involved in it per share, and sell that stock back to the community and pay off that note. It was just a matter, as I understood it at the time and so understand it now, of bookkeeping."

In becoming parties to this transaction, appellants probably relied, as they claim, upon the assurance of Allan, supported by his supposedly unquestionable financial responsibility, that they would ultimately suffer no loss thereby. Their subsequent disappointment as to the extent of Allan's financial resources, with the realization of

542

the probable consequences of their acts, did not enable them then to intend, with retroactive effect, the creation of a trust relationship.

It was claimed that the Peoples Wayne County Bank terminated appellants' ownership of this stock by appropriating it to the payment of appellants' note, which it received when it took over the American State Bank, but the record contains no substantial support for this claim.

The decree of the District Court is affirmed.